Reconstruction Finance Corporation, Appellee, v. City of Calumet City, Appellant.

Gen. No. 43,074.

74

Opinion filed October 23, 1944. Rehearing denied November 6, 1944. Released for publication November 6, 1944.

JOHN E. PAVLIK and FRANKLIN J. STRANSKY, both of Chicago, for appellant; FRANKLIN J. STRANSKY, of Chicago, of counsel.

LEONARD C. MEAD, HOWARD B. BRYANT, LEE WALKER, M. O. HOEL and WILLARD BALHATCHET, all of Chicago, for appellee; TOLMAN & MEGAN, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal defendant seeks to reverse a decree entered by the Superior court of Cook county, finding that defendant had wrongfully diverted special assessment funds which had been collected by it to pay special assessment bonds and coupons but all of which had not been so used.

December 2, 1936, plaintiff filed its 38 page complaint in equity against defendant to recover the

amount plaintiff claimed defendant City had diverted from special assessment funds, plaintiff owning a number of such bonds and coupons. The prayer was for an accounting and a decree for the amount found to be due plaintiff. There was also a prayer for general relief. January 6, 1937, defendant City filed its answer of two pages in which it admitted substantially all of the allegations of the complaint but averred that on April 16, 1935, an election was held in the defendant City and new officials were elected who qualified and were now administering the affairs of the City; that they had no knowledge as to other allegations of the complaint and called for strict proof. That the books and records relating to the special assessments in question were available for inspection by plaintiff and the public.

October 29, 1937, on motion of attorney for plaintiff, an order was entered referring the cause to a master in chancery to take the evidence and make up his report. Nothing further appears in the record until June 2, 1939, when an order was entered on motion of plaintiff, granting plaintiff leave to file an amended and supplemental complaint without prejudice to the reference, and it was further ordered that the answer of defendant stand as the answer to the amended and supplemental complaint. On the same date plaintiff filed an amended and supplemental complaint of 40 pages. Nothing further appears until nearly 4 years thereafter, when on April 30, 1943, an order was entered on the stipulation of the parties whereby defendant was given leave to withdraw its answer and to file instanter in lieu thereof, defendant's motion to dismiss the amended and supplemental complaint and its substituted answer to the amended and supplemental complaint, all without prejudice to the order of reference. On the same date, defendant filed its motion to dismiss the amended and supplemental complaint specifying as grounds that plaintiff failed

to comply with the provisions of Section 22 of the Civil Practice Act [Ill. Rev. Stat. 1943, ch. 110, par. 146; Jones Ill. Stats. Ann. 104.022], and in the following particulars: (a) that complainant sought an accounting of special assessment moneys based on its alleged ownership of certain special assessment bonds; (b) that such bonds were not negotiable but merely choses in action; (c) that the bonds in suit were not originally issued to plaintiff but that plaintiff was merely the assignee of some of the bonds; (d) that the complaint failed to set forth how and when plaintiff acquired title to the bonds. Attached to the motion was defendant's substituted answer of 3 pages to the supplemental complaint, in which the allegations of a number of the paragraphs of the complaint were admitted and a number of others denied. And continuing, it was averred that the contracts for the improvements were let and the assessment bonds issued to the persons on the dates, and in the amounts shown on the schedule attached as part of the answer; that payments were made on the bonds in the amounts on the dates and to the persons shown in another schedule attached and made a part of the answer and that defendant had not been notified of any assignment of the bonds and denied that plaintiff was the owner of any of the bonds prior to the time of the maturity of them or prior to the time the payments, shown on the schedule, were made on the respective bonds or at any time thereafter. That a complete record of all moneys collected on the several installments of the assessments is shown on another schedule attached to and made a part of the answer.

It was further averred that no part of the assessment fund was diverted by the defendant City to its own use and benefit and that any failure to apportion and pay to the owners of the bonds sued on was due to improper administration on the part of persons charged by law with the collection and disbursement of such funds. That there were no funds remaining.

in the various installments in suit; that defendant was not liable to plaintiff for any irregularity in the collection or disbursement of the funds; that the duty of collecting and disbursing the funds was imposed upon certain officials who were required to put up surety bonds before entering upon their duties, conditioned upon the faithful performance of their duties; that such bonds were posted by the individuals and that any liability for any irregularity in administrating the funds was the obligation of such officials and their sureties; that the plaintiff had a cause of action against any person who may have received preferential payments; that the records of the collection and disbursements of special assessment funds were available for inspection and that plaintiff knew or could have known of any diversion or any irregularities; that the bonds in suit were not negotiable.

It was further averred that two schedules attached to the answer and made a part of it show "the pro rata portion of collections due on the bonds sued upon after deducting payments previously made upon the respective bonds." As alleged in the answer three detailed schedules prepared by defendant City are attached showing the date of the contract, to whom let, the amount to be paid, the contractor, the number and amount of each installment, the collections and payments, etc., etc. It is further shown from these schedules that plaintiff, the Reconstruction Finance Corporation, is the owner of the bonds in suit and detailed statements of each bond and the installments and to whom prior payments were made.

October 21, 1943, the decree appealed from was entered, in which the motion of defendant to strike the supplemental complaint was denied and the motion of plaintiff to strike certain parts of defendant's answer, was sustained. The decree was entered on the pleadings and stipulation of the parties. It was stipulated that: "the figures and amounts of interest collected

by the defendant, The City of Calumet City, allocable to each bond and the amounts shown as over payments on certain coupons, for which the defendant, The City of Calumet City is given credit, as they appear in the decree, agree with the books and records of Calumet City.'' In the decree the chancellor found that plaintiff was the holder for value of the bonds in suit; ''that all of said bonds and coupons so owned by said plaintiff have been presented for payment at maturity and from time to time thereafter; and that said bonds were respectively acquired by the plaintiff for a valuable consideration; that the following is a list of said bonds so owned by said plaintiffs, together with the name of said plaintiff so owning said bonds.'' Then follows a description of the bonds in suit.

The court further found that all the bonds were ''lawfully issued and duly assigned to the plaintiff for a valuable consideration; that the bonds owned by the plaintiff were presented upon the due date to the City of Calumet City for payment and that payment was demanded from time to time, and that whatever payments were made upon either principal or interest upon said bonds were endorsed upon said bonds and coupons as credits thereon.'' It was further found that the City had collected certain sums under the assessment proceedings, the moneys of which were applicable to the several installments involved in this suit but ''instead of applying the funds to the payment of the bonds held by plaintiffs'' this was not done and certain moneys collected by defendant and payable to plaintiff upon the bonds in suit had not been so applied on account of the ''failure of the city and its officials to make prompt pro rata payments of the special assessment funds as they were collected, as required by law,'' as a result of which plaintiff was not paid the amount due it. The court then finds detailed statements showing the moneys collected and disbursements made in the several assessments. And it was

decreed that plaintiff recover from the defendant $28,883.55 and further decreed that the balance due on the bonds should remain an outstanding obligation over and above the amount found due by the decree and that the amount of the judgment should be endorsed on the respective bonds.

It was further adjudged and decreed that the defendant City "through its proper officials, shall appropriate and levy such necessary sums of money for the specific purpose of paying the amount so found to be due and owing from said City of Calumet City to said plaintiff at the next general tax levy so far as legally authorized, said amount so appropriated and levied being in addition to the amount required for actual necessary corporate purposes" until such amounts were sufficient to pay the amount found due by the decree.

January 18, 1944, defendant filed its notice of appeal and praecipe for record and March 16, 1944, there appears in the record what is designated "Report of Proceedings" which is a certificate by the trial judge made on March 16, 1944, in which he certifies that "regardless of any recitals in said decree which might indicate the contrary, no evidence was introduced at said hearing by either of the parties."

The liability of defendant is predicated on the fact that the special assessment fund was not properly applied pro rata to the payment of the bonds and therefore defendant City is liable for money collected and interest on such amounts as were diverted from the time the moneys were received, at 5% per annum. *Conway v. City of Chicago*, 237 Ill. 128; *Rothschild v. Village of Calumet Park*, 350 Ill. 330. In the latter case the court said: "The suit is brought to enforce its [the Village] liability, as trustee, to pay to the holders of the bonds the money which it received for that purpose, and it is the same, in effect, as an action of assumpsit for money had and received. Interest is

allowed in such actions, under section 2 of the Interest act, on money had and received to the use of another and retained without the owner's knowledge. The plaintiff in error was properly charged with interest on the amount received which should have been paid to the defendant in error.'' In such case plaintiff can recover his proportionate share of the amounts wrongfully diverted with interest thereon at 5% per annum from the due date of the bonds and coupons, where the diversion is made before the due dates, but if the diversion is made after the due dates, then from the dates of the diversion. In the instant case, as we understand the record and the argument of counsel for defendant, this method was not followed.

There is no merit in defendant's contention that there was no allegation in the complaint as to how and when plaintiff became the owner of the bonds in suit, as required by Section 22 of the Civil Practice Act. The bonds and coupons, copies of which are attached to the complaint are payable to bearer, as the statute requires, Section 84–86, chapter 24, Ill. Rev. Stats. 1943 [Jones Ill. Stats. 21.2308]. They pass by delivery. In the instant case the payments as made were endorsed on the bonds and coupons. And defendant's answer gives the names of the parties to whom payments were made and also shows that plaintiff, the Reconstruction Finance Corporation, is the owner of the bonds in suit. When the City makes payments on bonds or coupons, they must be presented, and in the instant case, this was done and the payments endorsed on the bonds and coupons. This is all that the City was required to do. These are further reasons why defendant's contention is untenable.

Defendant further contends that the decree is erroneous in ''ordering defendant to levy a general tax against all the property in the municipality to pay said $28,883.55 money judgment provided for in said decree, or any part thereof.'' In support of this its counsel in

their brief say that Section 9 of Article 9 of the Constitution provides that taxation by municipal corporations must be for corporate purposes and that the bonds and coupons in suit expressly provide they are payable solely out of the installment of the special assessment against which they are issued and that this limits the liability of the municipality, and that ''No court has ever held that a municipality is liable generally to pay interest out of money raised by taxation against all of the property in the municipality after the maturity of special assessment bonds, if the same are not paid when due.'' We think this contention is without merit. *Rothschild v. Village of Calumet Park*, 350 Ill. 330. In the instant case there is a judgment against it which the City is required to pay.

Counsel for defendant contend that the amount of interest allowed in the decree is wrong. We think this contention must be sustained. We have been unable to ascertain when the collections were made and the funds diverted. We have above stated the rule which renders the municipality liable for interest and since the record fails to disclose when the diversions were made, the decree in this respect cannot stand. For this reason, the decree of the Superior court of Cook county is reversed and the cause remanded.

One half of the costs in this court will be taxed against each party.

*Reversed and remanded with directions.*

NIEMEYER, P. J., and MATCHETT, J., concur.